IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTEN WILLIAMS,** : | |
|     **Plaintiff,** : | |
| : | |
|     **v.** : | **Case No. 2:24-cv-06767-JDW** |
| : | |
| **NORTH COVENTRY TOWNSHIP,** *et al.*, : | |
|     **Defendants.** : | |

## **MEMORANDUM**

Christen Williams, an unrepresented litigant, asserts claims against North Coventry Township ("NCT"), the NCT Police Department, NCT Police Chief C. Matthew Deichert, NCT Police Officer John Doe I, the Borough of Pottstown ("Pottstown"), Pottstown Chief of Police Michael Markovitch, Pottstown Police Officer John Doe II, Montgomery County Sheriff Sean Kilkenny, Montgomery County Sheriff's Department employees John Does III and IV, Montgomery County Correctional Facility ("MCCF") Warden Sean P. McGee, and MCCF employees John Doe V and Jane Doe. Her claims arise from an arrest in November 2024 that she claims was improper. For the reasons that follow, I will dismiss her claims.

## **I.    FACTUAL ALLEGATIONS**

According to a publicly available docket in *Commonwealth v. Williams*, No. CP-46-CR-3537-2021 (C.P. Montgomery), Lower Pottsgrove Police Officer Joseph Campbell arrested Ms. Williams on February 26, 2020, on charges involving bad checks and theft by deception. On February 6, 2024, Ms. Williams was admitted into an Accelerated

Rehabilitative Disposition ("ARD") program, ordered to complete a Community Service Program, ordered to pay restitution, and placed on probation in connection with the charges. The docket further reflects that delinquency notices were issued on April 17, 2024, and May 8, 2024. The court held a hearing on November 19, 2024, and a pretrial conference was held on December 12, 2024. A payment plan letter was docketed on March 26, 2025. The case is currently awaiting Ms. Williams's completion of the ARD program.

On the morning of November 12, 2024, Ms. Williams received a call from a friend who the police had stopped and who therefore could not drive her car home. Ms. Williams drove to her friend, identified herself to the two police officers on the scene, and told them she was there to drive her friend home. Upon confirming her identify, one officer (John Doe I) advised Ms. Williams that a bench warrant was outstanding because of her failure to appear for trial in 2023. Ms. Williams responded that the warrant was in error because she was already on probation following resolution of the theft charges. She provided her probation officer's contact information and information regarding her probation status to the officer. The officer reviewed the information but advised Ms. Williams that he needed to call to determine whether the warrant was, nonetheless, active. Upon learning that the warrant was active, the officer told Ms. Williams that he had to arrest her. He did, and he transported her to the Pottstown Police Station.

Upon arriving at the police station, Ms. Williams told an officer (John Doe II) that she was on probation for the theft charges that gave rise to the bench warrant and the warrant could not be active. She alleges that she offered to prove her probationary status to the officer if he would let her use her phone, but he did not answer her. The officer processed Ms. Williams and placed her in a holding cell at noon to wait for the Montgomery County Sheriff to transport her to county prison. Ms. Williams remained in the cell for ten hours, during which time officers conducted welfare checks. Ms. Williams complained of hunger and pain, and of feeling weak, lightheaded and shaky, and she advised an unidentified officer that she had been in the hospital the day and night before her arrest. That officer told Ms. Williams that he would check the status of the Sheriff's arrival and would find some food for her, but he did not provide her with anything to eat.

Montgomery County Sheriff's Deputies (John Does III and IV) arrived at 10 p.m. Ms. Williams told them that she had not eaten all day. In response, one of the Deputies—likely John Doe III—giggled and told her that a tray would be waiting for her when she arrived at county prison. Upon arriving at Montgomery County Correctional Facility, a corrections officer (John Doe V) admitted Ms. Williams, and a female corrections officer (Jane Doe) strip-searched and x-rayed her before placing her in a holding cell. Ms. Williams remained in the holding cell for approximately three hours, after which she was placed in the general population. She explained that she was on

probation for the 2023 theft charges both at the time she arrived at MCCF and at the time she was placed in the general population, to no avail. She was not fed until the next morning.

Ms. Williams appeared before an unidentified judge, who asked her why she did not appear for court. Ms. Williams explained that she had appeared and was, as a result, on probation. The judge scheduled a court date and, at approximately 6 p.m., Ms. Williams was released on the bond she had originally posted in connection with the theft charges.

Following her release, Ms. Williams contacted her probation officer and appeared in person at the probation office as instructed. She was told, however, that she had not needed to appear. On November 26, 2024, her lawyer advised her that the warrant was a mistake and open in the system by mistake.

Ms. Williams asserts claims against John Does I, II, III, IV, and V, Jane Doe, NCT Chief of Police Deichert, Pottstown Chief of Police Markovich, Montgomery County Sheriff Kilkenny, and MCCF Warden McGee, NCT, and the Borough of Pottstown. She claims that she has experienced loss of liberty, loss of wages, and various mental and emotional injuries. She asserts claims for civil conspiracy, municipal liability, unreasonable seizure and false arrest, false imprisonment, malicious prosecution, abuse of legal process, and intentional infliction of emotional distress. She asserts her claims

pursuant to the Fourth and Fourteenth Amendments of the United States Constitution, various provisions of the Pennsylvania Constitution, and Pennsylvania state law.

## II.    STANDARD OF REVIEW

A plaintiff seeking leave to proceed *in forma pauperis* must establish that she is unable to pay for the costs of her suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989). Where, as here, a court grants a plaintiff leave to proceed *in forma pauperis*, it must determine whether the complaint states a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). That inquiry applies the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). I must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). That means I must accept the factual allegations in the Complaint as true, draw inferences in favor of the plaintiff, and determine whether there is a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021). Conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678. When a plaintiff is proceeding *pro se*, I construe her allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

## III.     DISCUSSION

### A.     *In Forma Pauperis*

Ms. Williams has completed the Court's required forms and attested under penalty of perjury that she lacks the income or assets to pay the required filing fees. I will therefore grant her leave to proceed *in forma pauperis*.

### B.     **Plausibility Of Claims**

The vehicle by which a plaintiff may bring federal constitutional claims in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

#### 1.     **Unreasonable seizure/false arrest/false imprisonment**

"False arrest and false imprisonment are 'nearly identical claims' that are 'generally analyzed together.'" *Karkut v. Target Corp.,* 453 F. Supp. 2d 874, 879 (E.D. Pa. 2006) (quote omitted)). To state a claim for false arrest and related false imprisonment under the Fourth Amendment, a plaintiff must allege facts establishing that officers arrested her without probable cause. *See Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). "[P]robable cause to arrest exists when the facts and circumstances within the

arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.* at 483. "False arrest and false imprisonment claims will 'necessarily fail if probable cause existed for any one of the crimes charged against the arrestee.'" *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016)). "To properly analyze a claim asserting an illegal search and seizure under the Fourth Amendment, [the plaintiff] must plead the circumstances under which the search [or seizure] arose." *Medina v. Aprile*, No. 23-1057, 2023 WL 3440236, at *9 (E.D. Pa. May 12, 2023) (citation omitted).

     Ms. Williams alleges that when Officer John Doe I advised her that there was a bench warrant for her arrest for failure to appear for trial on 2023 theft charges, she told him that she had appeared at trial on those charges and was then currently on probation. She offered to provide her probation officer's contact information to confirm this. Upon reviewing the information Ms. Williams provided, John Doe I advised her that he still needed to check to see if the warrant was active. And, upon learning that it was, he told her he still had to arrest her. Ms. Williams alleges that similar conversations happened at each stop along the way.

     The publicly available docket in Ms. Williams's 2023 criminal case reflects that at the time John Doe I arrested her, there were two outstanding and active Delinquency Notices. *See Commonwealth v. Williams*, CP-46-CR-3537-2021. "A facially valid warrant

generally establishes probable cause for arrest." *Tucker v. City of Philadelphia*, 679 F. Supp. 3d 127, 137-38 (D.N.J. 2023). Because public records reflect that John Doe I arrested Ms. Williams based on the facially valid Delinquency Notices, she fails to allege plausibly that he made the arrest without probable cause. *See Garcia v. Cnty. of Bucks, PA*, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001). Because John Doe I found a facially valid warrant, Ms. Williams cannot plausibly allege that he arrested her probable cause, so I will dismiss her false arrest and false imprisonment claims with prejudice.

Because these claims fail, Ms. Williams's claims against Chief Deichert, Chief Markovich, Sheriff Kilkenny, and Warden McGee also fail. A supervisory liability claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisor. *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (*per curiam*). Considering the dismissal of Ms. Williams's false arrest and false imprisonment claims, her derivative supervisory liability claims are not plausible. Her related municipal liability claims against NCT and Pottstown and her conspiracy claims against all Defendants are not plausible for the same reason. *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) I will therefore dismiss them with prejudice.

### 3.  Malicious prosecution

To state a Fourth Amendment malicious prosecution claim, a plaintiff must plausibly allege that a government official charged her without probable cause, leading

to an unreasonable seizure of his person. *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 558 (2024). A malicious prosecution claim under § 1983 has five elements: (a) the defendants initiated a criminal proceeding; (b) the criminal proceeding ended in the plaintiff's favor; (3) the defendants initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). That a "valid" crime was also charged along with the charge that ended in the plaintiff's favor does not create a categorical bar to a claim. *Chiaverini*, 602 U.S. at 562 A "favorable termination" occurs when a prosecution ends "without a conviction." *Thompson*, 596 U.S. at 49.

Although Ms. Williams alleges that the warrant against her was a mistake, she does not allege that any charges against her were dismissed. The publicly available docket in Ms. Williams's criminal case reflects that the charges remain subject to her completing an ARD program including payment of restitution and that a Payment Plan Introduction Letter was filed on March 26, 2025. *Commonwealth v. Williams*, CP-46-CR-3537-2021). Because Ms. Williams's underlying criminal proceeding is still pending, her malicious prosecution claim is unripe. I will therefore dismiss it without prejudice. *Sturgis v. City of Philadelphia*, No. 23-4409, 2024 WL 1604597, at *8 (E.D. Pa. April 11, 2024) Ms. Williams may reassert this claim at a later date in a new civil action if the underlying

proceedings ever terminate in her favor. To the extent Ms. Williams asserts supervisory liability, municipal liability, or conspiracy claims based on her malicious prosecution claim, those claims, too, are unripe, and I will also be dismissed without prejudice but without leave to amend.

### 4. Claims against NCT police department

Ms. Williams includes the NCT Police Department as a Defendant in the caption of the Complaint. However, courts have held that a police department is a sub-unit of the local government, not an independent actor. It is therefore not susceptible to suit. *See e.g. Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993). Therefore, the NCT Police Department is not a proper defendant under Section 1983. I will dismiss the claims against it with prejudice.

### 5. State law claims

#### a. Abuse of legal process

The elements of an abuse of process claim under Pennsylvania law are (i) the use of legal process against the plaintiff, (ii) primarily to accomplish a purpose for which the process was not designed, and (iii) causing harm to the plaintiff. *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993). Significantly, "'[a]n abuse of process claim cannot be based on the wrongful initiation of proceedings but is based on a perversion of the legal process after it is initiated.'" *McCarthy v. Jauregui*, No. 21-1759, 2024 WL 1313868, at * 6 (M.D. Pa. Mar. 27, 2024) (citations omitted). Ms. Williams's claims are

based solely on her arrest—the initiation of process—and she includes no allegations describing whether or how any Defendant abused the process after that. Accordingly, she has not stated a plausible claim for abuse of process.

### b. Intentional infliction of emotional distress

Under Pennsylvania law, to state a claim for intentional infliction of emotional distress, a plaintiff must allege that the conduct complained of was extreme and outrageous, the conduct was intentional or reckless, the conduct caused emotional distress, and the distress caused was severe. *Eck v. Oley Valley Sch. Dist.*, No. 19-1873, 2019 WL 3842399 at *8 (E.D. Pa. Aug. 15, 2019). The outrageous nature of the conduct at issue is key. Only conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (quoting *Cheney v. Daily News L.P.*, 654 F. App'x. 578, 583 (3d Cir. 2016) (further citations omitted).

Ms. Williams alleges that the Defendants arrested and briefly detained her based on an invalid warrant, and that she was not provided with any food for nearly 24 hours. This conduct is not sufficiently outrageous to support a plausible intentional infliction of emotional distress claim. *See, e.g.*, *Suero v. Watkins*, No. 13-7181, 2016 WL 8716667 at *11 (E.D. Pa. Feb. 12, 2016). She also does not allege that she suffered any physical harm, so her claim cannot proceed. *See Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010)

11

(citing *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. 2005)) I will therefore dismiss this claim.

## IV.   CONCLUSION

I will grant Ms. Williams leave to proceed *in forma pauperis*. I will dismiss her malicious prosecution claim (and any claims that derive from it) without prejudice but without leave to amend. I will dismiss the rest of her claims with prejudice. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

May 9, 2025